1926.]                Bd. of Ed. v. County Bd. of Ed.

## A SERIOUS PUBLIC SCHOOL SITUATION UNRAVELED.

Common Pleas Court of Williams County, Ohio.

No. 9645. THE BOARD OF EDUCATION OF CENTER TOWNSHIP RURAL SCHOOL DISTRICT V. THE AUDITOR, TREASURER, COUNTY BOARD OF EDUCATION OF WILLIAMS COUNTY, OHIO, THE BOARD OF EDUCATION OF BRYAN VILLAGE SCHOOL DISTRICT, THE BOARD OF EDUCATION OF PULASKI TOWNSHIP RURAL SCHOOL DISTRICT, AND THE JOINT HIGH SCHOOL COMMITTEE OF BRYAN UNION HIGH SCHOOL DISTRICT.

No. 9668. THE STATE OF OHIO, ON RELATION OF THE BOARD OF EDUCATION OF FLORENCE-EDON SCHOOL DISTRICT, V. THE BOARD OF EDUCATION AND THE CLERK OF THE BOARD OF EDUCATION OF NORTHWEST TOWNSHIP RURAL SCHOOL DISTRICT.

No. 9721. THE STATE OF OHIO, ON RELATION OF LISLE M. WEAVER, PROSECUTING ATTORNEY FOR WILLIAMS COUNTY, OHIO, V. THE BOARD OF EDUCATION OF NORTHWEST TOWNSHIP RURAL SCHOOL DISTRICT, THE COUNTY BOARD OF EDUCATION OF WILLIAMS COUNTY, OHIO, THE AUDITOR OF WILLIAMS COUNTY, OHIO, AND THE STATE DIRECTOR OF EDUCATION OF THE STATE OF OHIO.

Decided December 31, 1925.

*Schools—Illegal Use of Funds for a Purpose Other Than That for Which the Money was Collected—Mistaken Use of Judicial Power in Determining and Liquidating Transportation Charges Claimed by Parents or Others—Transportation Charges of High School Pupils Should Not Be Paid Out of Rural School Funds—Mandamus to Compell Reopening of Closed Schools and the Levying of Additional Taxes—Where Some of the Blame Rests for a Serious Situation—Plain Violation of Constitutional Provisions—Gross Abuse of Discretion.*

1. The county board of education has no right to take funds raised in one taxing district for a particular purpose to pay an indebtedness of another taxing district. The taking of the general fund of the county to pay the debts of a township school district, as provided in Sec. 7610-1, G. C., is in violation of Art. XII, Sec. 5, of the Constitution, which pro-

vides: "Every law imposing a tax shall state distinctly the object of the same to which only it shall be applied."

2. The determining by the county school board of a controversy between a parent and a township school board for hauling his children to school, liquidating the amount, ordering the amount paid, if not paid ordering a third party to pay it from funds which it holds for another purpose, ordering the third party from funds thereafter coming into its possession to replace the money so paid by it for the debtor, is the exercise of judicial power, and is prohibited by Art. IV, Sec. 1 of the Constitution of Ohio.

3. The cost of transporting pupils to a union high school organized under Sections 7669, G. C., *et seq.*, from one of the township rural school districts making up the joint high school district should be paid out of the funds raised in the union high school district to maintain the high school, and should not be paid out of the funds raised for the rural schools in the township rural school district.

4. When schools have not opened in a township rural school district for four months of the 1925-26 school year for the reason that there are no funds of the August, 1925, distribution in the treasury and the February, 1925, distribution will bring to the school district about 20 per cent. of the expense of running the schools for the school year, and the township school board, the county school board, and the state director of education, have not taken the steps necessary to obtain a part of the state equalization fund, and to levy an additional tax as provided in Sec. 7596-1, the court in mandamus proceedings will order the schools opened and will order the boards and officers to forthwith levy an additional tax as provided in said section, and will order the auditor to place such tax on the duplicates to pay the expense of maintaining such school. The failure of the boards and officers to levy such tax and to open the schools is a gross abuse of discretion.

5. No part of the tax so levied shall be used to pay the cost of transportation of high school pupils.

*Augustus L. Gebhard,* Attorney for the Board of Education of Center Township, and for the Board of Education of Florence-Edon School District, and for the State on Relation of the Prosecuting Attorney.

*Elwin C. Peck,* attorney for the Joint High School Committee of Bryan Union High School, and for the Bryan Village School District, and for the Board of Education of Northwest Township.

*William H. Shinn,* attorney for the Board of Education of Northwest Township.

*Lisle M. Weaver,* Prosecuting Attorney, attorney for the County Auditor, and for the State on Relation of the Prosecuting Attorney.

*George C. Rings,* attorney for the County Board of Education.

*Charles S. Best* and *H. H. Griswold,* Assistant Attorneys General, attorneys for the Director of Education.

NEWCOMER, J.

Three cases growing out of controversies arising in school matters of this county were submitted at separate hearings. Bryan Union High School serves three school districts, Bryan Village School District, Pulaski Township Rural School District, and Center Township Rural School District; and is managed by a joint high school committee composed of two members from each of these boards as provided in Sec. 7669, G. C., *et seq.* The Florence-Edon school district includes the village of Edon and the township of Florence, and maintains a high school. Northwest township rural school district does not maintain a high school. Northwest township children of high school age attend the high school at Edon. The Florence-Edon school district charged tuition to Northwest township for the pupils attending from Northwest township. High school pupils of Center Township attend the union high school at Bryan. Those living more than four miles from Bryan presented bills to the Center township board of education asking to be paid for hauling their own children to high school at Bryan. The parents and the township board not having reached an agreement as to the amount to be paid, the parents asked the county board of education to determine the amount due them from the township board for transporting their children to high school. These bills were presented on blanks furnished by the county board of education and are all substantially as follows:

Bryan, Ohio, July 25, 1925.

To the County Board of Education of Williams County, Ohio:

Please consider the following bill for transportation to Bryan Union High School or for board and lodging in lieu of transportation to Bryan Union High School. I am a resident of Center Twp. school district and the Center Twp. school board will not honor the following bill:

Hal Leu has been in attendance at Bryan Union High School 170 days, commencing Sept. 2, 1924, and ending May 22, 1925. Distance of round trip 12 miles. Cost per day of transportation or amount of board and lodging in lieu of transportation 40 cents. Total for Hal Leu, $68.00.

D. A. Leu, Bryan, Ohio.

Attached to this is the following:

Bryan, Ohio, July 30, 1925.

To the County Board of Education, Williams County, Ohio:

To D. A. Leu, of Bryan, Ohio, $51.00.

On the back is the following:

D. A. Leu.   No. of Warrant 342.   Amount, $51.00. Allowed by county board of education July 28, 1925.

Record of Minutes on page 329.

F.  O.  Russell,
Per  S.  Y.,  Clerk.

The county board determined the amount and ordered paid during the past year bills presented by parents in Northwest township aggregating $3,093.90, and presented by parents in Center township aggregating $2,390. The county board determined the amount due and ordered paid to parents throughout the county for transporting their own children to high school during the past year $9,462.90, which amount was ordered paid out of the general fund of the county treasury of Williams county. The county board drew warrants for these amounts. The parents received the money on the warrants. These warrants overdrew the general fund of the county. The county board ordered the auditor to with-

hold from the several school districts the amounts so allowed for transporting pupils to high school. At the August, 1925, distribution the county auditor took from the school funds of the several school districts the amount so allowed by the county board of education for transportation and reimbursed in part the general fund of the county as provided by Sec. 7610-1, G. C.

The suit brought by the board of education of Center township rural school district against the auditor and others seeks to enjoin the auditor from taking from the funds of Center township rural school district the $2,390 and placing this in the general fund of the county. The board of education of Center township rural school district contends that the county board of education had no right to liquidate the amounts in controversy between the parents and the Center township board; that the county board of education had no right to take money from the general fund of the county to pay an obligation not liquidated against Center township rural school district; and further claims that if the county board had the right to take the funds, then that the amount so paid should be wihheld from the funds of Bryan union high school, which includes Center township, for the reason that the transportation was for transporting pupils to high school; that taxes raised for high school purposes in the joint high school district including Center township, and not taxes raised in Center township for the elementary schools of Center township should pay for transporting pupils to high school. The joint high school committee, the board of education of Bryan village school district, and the board of education of Bryan village school district, and the board of education of Pulaski township agree with all the claims of the plaintiff, except they contend that the transportation charges should be paid by Center township, not by the joint high school committee.

The county board of education contends that it has the right to determine the amount owing on these bills, and

has the right to take the money from the general fund of. the county to pay this indebtedness which it determines in favor of the parents against Center township rural school district, and to order this money withheld at the next semi-annual distribution to Center township.

The tuition for high school students in Northwest township who have been attending the high school at Edon, has not been paid. The Florence-Edon district recovered a judgment against Northwest township for $3,291.80 for tuition. No provision was made by the Northwest township board to pay this judgment. Tuition has accrued since then.

The case of the state of Ohio on relation of the Board of Education of Florence-Edon School District against the Board of Education of Northwest Township is an action in mandamus to compel the clerk and the board of education of Northwest township to take the necessary steps to provide for the levying of a tax to pay the judgment which has been entered in favor of. Florence-Edon school district for high school tuition.

In Northwest township, the township board and the parents could not agree on the amount to be paid for transporting their children to high school at Edon more than four miles away. The parents presented bills to the county board of education. The county board of education liquidated the amounts to be paid, ordered them paid by warrants on the county treasury out of the general fund, and then ordered the auditor to withhold from Northwest township school funds at the next semi-annual distribution the amount so allowed, being $3,093.90. This amount was withheld from the Northwest township distribution at the August, 1925, settlement out of funds raised to pay teachers salaries, and to pay bonds and interest. This amount and the amount owing teachers for the previous year exhausted the entire funds of the township so that there was no money with which to employ teachers. No teachers were employed, no public schools of any kind have been open in Northwest township since April, 1925.

At three different elections during the past four years, the electors of Northwest township refused to give a majority vote to levy three mills for school purposes; in the spring of 1925 a petition to place a three mill levy on the tax duplicates failed to receive sufficient signers. There are $14 in the treasury of the board of education of Northwest township rural school district with which to pay teachers for the school year of 1925 and 1926. This board will receive at the February, 1926, distribution about $3,000 to maintain the public schools. The clerk of the board, a farmer, in that township submitted a statement of the situation in Northwest township to Vernon M. Riegel, Director of Education, which sets out the financial situation in this township, and which, in fact, underestimates the indebtedness by about $2,000. His letter is as follows:

Montgomery, Mich., Oct. 10, 1925.

Mr. Vernon M. Riegel,
    Columbus, Ohio.
Dear Mr. Riegel:

We are planning to vote on the three (3) **mill levy at** the November election, and we are giving you our financial condition of our Township, Northwest Township, Williams County, Ohio.

| | |
|---|---:|
| Our Valuation is about | $1,430,000.00 |
| Unpaid Foreign H. S. tuition 1923-1925 | 5,253.00 |
| Unpaid transportation | 1,500.00 |
| Est. Foreign H. S. tuition 1925-1926 | 4,000.00 |
| Teachers salary 1925-1926 | 6,400.00 |
| Fuel | 250.00 |
| Total expense | $ 17,403.00 |
| Est. Feb. Settlement | 3,000.00 |
| Bal. Indebtedness | $ 14,403.00 |

Now if the levy passes will we get enough state aid to finish our school year? Shall the board of education begin school if the levy passes?

We thank you very kindly for an early reply.

Yours very truly,
A. F. Brosy, Clerk.

To which letter Vernon M. Riegel replied as follows:

October 22, 1925.

Mr. A. F. Brosy,
    Montgomery, Mich.
Dear Sir:

It is very provoking for school districts to exercise such poor financial management as to become involved in debt and then ask the state to pay their way out. You should have closed your schools long ago. Your district is not really a state aid district. It is spending too much money for a state aid district. I cannot tell you whether you will get state aid or not even though the levy passes. Your application is not made out properly and it is difficult for me to make any such estimate. I do not understand why that makes any difference. If your district does not get any state aid, it needs the proceeds of the 3-mill levy all the more. The matter will be given every possible consideration at the proper time.

Yours very truly,
Vernon M. Riegel,
Director of Education.

Mr. Russell, the county superintendent of schools of Williams county, Ohio, called to the attention of the director of education the situation of Northwest township and suggested that steps be taken to provide funds to maintain schools to which Vernon M. Riegel, director of education, replied:

October 9, 1925.

Mr. F. O. Russell,
    County Superintendent of Schools,
        Bryan, Ohio.
Dear Sir:

I have the following report to make on the application of the districts of your county for state aid:

*   *   *   Northwest—This district is not eligible for state aid because it has not voted the additional levy. If it would vote the 3 mills I do not think it would need any state aid. If the people will not vote the 3 mills, it will indicate they do not perhaps want school. If they think it will do their community any good, if they think it will increase the value of their property not to keep their schools open and not to educate their children, I

do not think that there is any reason why they should be prevented from having just the conditions they wish to have.

Very truly yours,
Vernon M. Riegel,
Director of Education.

The three mill levy having been defeated at the November, 1925, election, Mr. Russell in a personal interview with Mr. Riegel called his attention to the fact that the schools in Northwest township were closed, that the three mill levy had been defeated. The director of education took no action to provide schools. The county board took no steps to open schools in Northwest township.

Since the bringing of this action the state director of education has sent to county superintendents the following letter:

"December 14, 1925.
"Dear Superintendent:
"I am sending you this statement of facts relative to the closing of schools in this state because of lack of funds that you may, through your local newspapers and other means of publicity, get correct information before the people of your county for the purpose of correcting false rumors, exaggerated statements and conceptions as to the financial distress of schools in general.

" '* * * No village schools are closed; no centralized rural schools are closed; no district maintaining a high school is closed from lack of funds.

" 'There are eight one-room rural schools in the Northwest Township Rural School District, Williams County, Ohio, which are closed because of lack of funds. These are the only schools closed at the present time. There is no centralization in this district. This district does not maintain a high school. The schools of this district belong to the most inefficient and cheapest type of schools in the state. This district has paid as little in the past as it could and at the same time have any kind of a school at all and now it refused to pay enough to have any school of any kind, be it ever so poor * * *.

" 'There are less than a dozen districts out of the twenty-five hundred in the state that are anticipating

financial trouble that might lead to a shortening of the terms.

" '* * * In the district that has permitted its school to close all kinds of excuses and reasons are being given. They blame it on the state department of education, the county board of education and the county superintendent, the state teachers' association, and the laws of the state. None of these excuses are valid. In so far as the state department is concerned, there is nothing to be said except that these schools which are closed are not of the type that are affected by the department's standards and requirements or in fact by any other standards and requirements. Furthermore, I do not know of any law that detrimentally affects them. School laws of recent enactment have been based on the principle of home rule. The people of any district can spend as much or just as little for education as they desire to spend. The financing of the schools that are closed rests absolutely with the people of the district in which they are located. These people have refused to provide the necessary funds for the poorest and cheapest kind of schools and as a result they have closed. It is no difficult problem to determine whose fault it is.

" 'The financial distress of the schools of the state has been over press-agented and highly exaggerated. The department of education has made a thorough and complete survey of the state and has found that all the districts except a very few of the twenty-five hundred in the state are adequately financing their schools and those few districts that are not doing so could finance them if the people really believed in schools and education.'

"Very truly yours,
"Vernon M. Riegel,
"State Director of Education."

Notwithstanding his "thorough and complete survey of the state" he has taken no action to open the schools in Northwest township. Notwithstanding the finding of the director of education in his "thorough and complete survey of the state" that "there are less than a dozen districts * * * in the state that are anticipating financial trouble that might lead to a shortening of the term," there are more than that many districts in Williams county alone which would close their schools or

shorten their term, if they did not go further in debt, contrary to law, for running expenses.

Notwithstanding the statement of the director of education that Northwest township "has paid as little in the past as it could," the tax levy in Northwest township has been for the past six years the maximum levy within budget limitations. An additional school tax could have been placed thereon only by the direction of the state director of education, which he has failed and refused to do.

The county board of education at the time it allowed bills aggregating $3,093.90 to parents in Northwest township for the use of their own automobiles driven by their own children to high school, knew the financial situation in Northwest township. A member of the board of education of Northwest township is a member of the board of education of Williams county. The county board knew that the withholding of this $3,093.90 would deprive the township of any funds with which to open schools. Requests made for state aid by the Northwest township board were ignored or refused. At the time the state director of education advised the Northwest township board that "you should have closed your schools long ago," he knew that if the schools were closed Northwest township would get no part of the 2.65 mills levied by the state for schools, that the township would lose $3,700 of school taxes paid by the tax payers of the township. He knew that the statutory obligation of the district to furnish educational facilities could be enforced by judgment against the township board. He knew that if the schools were closed Northwest township would not get the school tax it paid, and the indebtedness arising from furnishing school facilities outside the township would be greater than the expense of maintaining schools in the township. He knew that it was impossible to open the schools without action on his part.

The budget presented by the township board was sufficient to maintain schools. To get within the budget limitations the county budget committee was compelled

to cut this down half.　Without a levy outside the budget limitations, or without state aid, it is impossible to maintain schools in Northwest township.

The decision in the mandamus case brought by the Florence-Edon school district to compel Northwest township to take the necessary steps to levy a tax to pay the judgment has been delayed until such time as there are funds in sight to maintain the first eight grades of schools in Northwest township.　So long as those schools are closed by lack of funds the officers who have the law to enforce should so enforce the law as to open the elementary schools in Northwest township.

Counsel contend that the township school board should determine the priority of demands on the funds raised in that township for school purposes and that the township board, if there are not sufficient funds to pay all demands, can better determine which demand is the more important.　The township board should determine which is the more important, to hire teachers to keep the schools open, or to use the money to pay parents for the use of their own automobiles driven by their own children while attending high school.　Counsel urge that a law which takes that determination away from the local school board and places it in the county school board, or the county superintendent or the director of education at Columbus, is contrary to the American notion of local self government.　But this argument attacks the wisdom of such legislation, not the right under the constitution to enact such legislation.　We agree with counsel that the local board of education, elected by the people, can better determine the priority of demands, when funds are not available to meet all demands, than a county board, or superintendent, or a state director of education. We are also of the opinion that the local board has better opportunity to determine the amount of money needed to maintain schools than any county board, or superintendent, or county budget committee, or state director of education.　But this is for the legislature, not the courts, to remedy.　The Northwest township board is not per-

mitted by law either to determine the amount of money to be raised for schools, or to determine for what purpose the money, after it is raised, is to be spent. Distant boards, bureaus, superintendents and directors control the acts of the local board in raising money for schools, and spend the money before it reaches the local board. When governing agencies are too far away from the keen eyes and sharp ears of the human being who is governed and is taxed for such government something usually goes wrong. But the remedy for those evils is in the legislature, not the courts, save and except as these laws may encroach on rights guaranteed by the constitution, and save and except as the acts of officers and boards may be contrary to the statutes.

Counsel contend that any law which permits the county school board to take out of the general fund of the county $9,462.90 in one year, thereby so depleting the general fund that there is no money in this fund, leaving outstanding unpaid bills of about $10,000 against the county, being the ordinary bills for the running expenses of this county, such as the salaries of county officials, the expense for fuel, light, water and the ordinary supplies necessary for the running of business of the county—that any law which authorizes such a use of public funds is void. The county government would cease for lack of money if people were not willing to extend credit to the county. As to the wisdom of such laws, we may not inquire; that is a matter for the legislature to determine. We may inquire, as to whether or not a law which permits the county board of education to adjudicate a controversy between two parties and order the amount found due to be paid out of the general fund of the county, which fund is raised for an entirely different purpose, and then order that the amount so found due should be withheld from funds due the school district, violates the constitution of the state of Ohio. If it does, the courts can grant relief. We should inquire into the constitutionality of a law that depletes the general fund of the county, so as seriously to impede, if not

actually stop, the functioning of county government by using the funds elsewhere.

Section 5, article 12, of the Constitution of the state of Ohio provides: "No tax shall be levied except in accordance to law and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

Section 5630, G. C., provides for the general county levy and the purposes for which it may be applied. The payment of claims against a school district is not one of the purposes. The taking of money out of the general fund of the county treasury by the county board of education to pay a claim against a township board of education is prohibited by the constitution as above quoted. The withholding, by the auditor, at the semi-annual distribution out of funds not raised for that purpose of an amount equal to the amount so taken by the county school board, is also prohibited by the section of the constitution above quoted.

Taxes levied for one purpose cannot be applied to another purpose. 28 Cyc., 1730-1731. Taxes levied for specific purposes, such as taxes to pay bonds and interest, cannot be withheld by the auditor on order of the county board of education to pay transportation claims. As stated in the constitution, the "law imposing a tax shall state distinctly the object of the same to which only it shall be applied." *State, ex rel.,* v. *Pohling,* 1 O. C. C., 486; *State, ex rel.,* v. *Auditor,* 14 O. C. C., 104.

In determining the amount of the claims for transportation, and in ordering them paid the county board of education, is liquidating a controverted claim. The township boards refused to pay the amount claimed by the parent. These two parties not being able to settle their controversy, the parent, the plaintiff, asks the county board of education to find the amount he should be paid by the township board, the defendant, for such transportation. The county board adjudicates the amount; then it takes the next step and orders it paid by the township board. It goes further and takes a step similar to

the action of a court in garnishment proceedings; it orders the money to be taken out of the general fund of the county to pay the claimant, and then orders the county to withhold that amount out of money it receives for the township board. The county board of education adjudicates a controversy between two contesting parties, liquidates the amount, orders it paid, upon its not being paid, by proceedings similar to garnishment. proceedings, takes the money from a third party and pays it to the plaintiff, and orders the third party to reimburse itself from money which will thereafter be in its possession belonging to the defendant. This is exercising judicial power, and is prohibited by Article 4, Section 1 of the constitution of Ohio which provides:

"The judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas, courts of probate, and such other courts inferior to the courts of appeals as may from time to time be established by law."

Courts have repeatedly held that this grant of the judicial power to the courts is exclusive. The legislature can create additional courts. But it cannot grant judicial power to any board or group except a court. Neither the legislature by enacting the law, nor the executive board in administering the law will be permitted to encroach upon the rights of the judiciary. The attempt to confer judicial power upon executive officers, the encroachment of the legislative and executive departments upon the judicial department is discussed in many cases.

*State, ex rel.,* v. *Gilbert,* 56 O. S., 575; *State, ex rel.,* v. *Otter,* 106 O. S., 415; *Cottrell* v. *Com.,* 24 O. N. P. (N. S.), 281; *Zanesville* v. *Telegraph Co.,* 64 O. S., 67; *Schario* v. *State,* 105 O. S., 535; *Wagner* v. *State,* 24 O. N. P. (N. S.), 113; *Riglander* v. *Star Co.,* 90 N. Y. S., 772-12 C. J., 808, 900; *State, ex rel.,* v. *Ryan,* 182 Mo., 349-81 S. W., 435; *State, ex .rel.,* v. *Noble,* 118 Ind., 350; *Willis* v. *Legoris,* 45 Ill., 289; *Railroad Co.* v. *People,* 212 Ill., 638-72 N. E., 725.

The part of Section 7610-1 which authorizes the county

board of education to determine the controversy between the parent and the township board, and to order the amount paid out of the general fund of the county being unconstitutional, it follows that the county board had no right to order the county auditor to take from the funds of Center township the $2,392 attempted to be withheld from the funds of that township. The auditor is enjoined from taking this amount out of the Center township rural school district funds and is ordered to pay said money to said district.

A court of equity acquiring jurisdiction in a controversy retains jurisdiction to work out complete relief for the parties. This $2,392 having been unlawfully paid out of the general fund of the county, the county is entitled to recover that amount from the parents to reimburse the general fund. The parents have a claim for transportation against the township board or against the joint high school committee which they are entitled to have adjudicated. Thirty-two different parents in Center township presented claims to the county board for allowance for transportation. This would necessitate thirty-two independent suits by the county to recover the money. Then there would follow thirty-two independent suits against the township board or against the joint high school committee by these parents to recover their money. A court of equity to avoid a multiplicity of suits will determine the rights of all parties in this matter in this action. This court will determine the amount which the parent is entitled to receive for transportation; if the parents are entitled to more the court can so order; if the parents have received too much, the court can order the parent to pay into the county treasury the excess; the court will order either the board of education of Center township rural school district, or the joint high school committee to pay into the county treasury the amount so determined to be owing parents to reimburse the general fund for the amount that has been paid for transportation.

Reaching this conclusion the court must determine the

further question raised in the Center township case. The petition asks the court to determine whether this shall be paid out of funds raised for the first eight grades of Center township, or out of funds raised for high school purposes in Center and Pulaski townships and Bryan village, being the joint high school district. The law relating to transportation provides in substance that the transportation shall be paid by Center township rural school district. (Sec. 7764, G. C.) Subsequent to the creation of the township districts there was created the union high school of the three districts. A separate tax levy is uniformly spread over these three districts for the purpose of maintaining a high school. The 2.65 mills from the state levy is apportioned to the union high school district so that this union high school district receives all the money raised for high school purposes by the district tax and likewise its share of the money from the state tax of 2.65 mills. It receives this for the purpose of furnishing high school education to all pupils in those three districts.

John G. Price, Attorney General, in Opinions of Attorney General for the year 1922, Vol. 1, page 399, reaches the conclusion that the transportation of those who live more than four miles from the Bryan union high school should not be paid out of the union high school funds, but should be paid out of funds levied for maintaining schools in Center township. He bases this opinion upon the lack of specific legislative direction in the sections creaitng a union high school. Upon reading the sections relating to the creation of a union high school, what is said therein, and in other sections, about transportation, considering the purpose of these sections, this court is of the opinion that the charges for transportation are high school charges and should be paid out of the funds raised for the union high school, and are not proper charges to be paid out of the money raised for the schools in Center township rural school district. Attorney General Price after concluding that the board of education of the district in which the child lives has power to furnish trans-

portation, does not take the next step and hold that this transportation shall be paid out of funds raised to maintain the school he attends.

We have considered the fact that the high school buildings are located in Bryan. Center township did not help build them. It is urged that Center township ought to pay the transportation charges of its pupils to get them to these buildings for which it did not pay. The purpose of the law is to place the entire burden of maintaining the union high school upon the union high school district. A part of this burden is the expense of maintaining a high school building. The court finds that such an amount as may be lawfully determined to be owing the parents for transporting their children to Bryan union high school from Center township, when adjudicated, is a charge against Bryan union high school to be paid out of the funds raised for the high school; and that the Bryan union high school committee should reimburse the general fund of the county for the amount properly paid for transportation.

The orders above made are final orders. The appeal bond is fixed at $200 for each party.

This case is continued for further hearing upon proper pleadings to determine the amount to be paid out of the funds of Bryan union high school district for transportation; and to determine the proper amount to be charged by the Bryan village school district for maintenance of buildings. It is further ordered that the parents who received money from the general fund of the county be made defendants and be required to set up claims which they have for transporting their children to high school. Upon a final hearing the court will determine the amount of such transportation, and what amount if any, should be returned by them to the county treasury by reason of having been paid more than they are entitled to receive. It is ordered that the prosecuting attorney file a supplemental pleading in this case setting up such facts as may be necessary to recover the money for the general fund of the county. This case is continued for a determination of the issues thus raised.

In the mandamus case of Florence-Edon school district against Northwest township, the court finds that the plaintiff is entitled to the writ of mandamus as prayed for.

In the mandamus case brought by the prosecuting attorney against the Northwest township board, the county board, the director of education and the auditor, the court finds that the board of education of Northwest township did not, prior to the commencement of the suit, by resolution take the steps as provided in Section 7596-1, G. C., to get funds to open the schools; that the county board of education has not taken the steps as provided in said section, nor any of the administrative steps provided in Sec. 7610-1 to open schools, although the township board repeatedly called to the attention of the county board and the county superintendent the conditions in Northwest township. The attention of the director of education was repeatedly called to the situation in Northwest township. His attitude is reflected in his letters above quoted. He knew that free schools were not maintained. He made no effort to maintain them.

From the organization of government in Ohio to the present, it has been the policy to maintain schools. The ordinance of 1787 provides "Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged." The constitution of Ohio in 1802 contained substantially the same language in Art. 8, Sec. 3. The constitution of 1851 which is now in force, provides: "Religion, morality and knowledge however, being essential to good government, it shall be the duty of the General Assembly to pass suitable laws—to encourage schools and the means of instruction." Art. I, Sec. 7. And further provides "The General Assembly shall make such provisions by taxation, or otherwise, as with the income arising from the school trust fund, shall secure a thorough and efficient system of common schools throughout the state." Art. 6, Sec. 2.

The laws of Ohio provide for compulsory education and provide for punishing a child of school age by proceed-

ings in the juvenile court if he does not attend school; that parents shall see that their children attend schools and make it a misdemeanor if the parents do not provide schools for their children; the law further provides that whoever contributes to the delinquency of a minor may be punished. Whoever contributes to the delinquency of these children in Northwest township who are not attending school is violating the penal statutes of Ohio.

Notwithstanding the positive commands of the constitution and laws of the state, the officers upon whom is placed the duty to maintain public schools in Northwest township, contend that there is no law which authorizes the maintenance of free public schools in that township at the present time.

By reason of the maze of school laws and the entangling red tape in boards, superintendents, directors and bureaus, the way to open the schools may not seem clear. The laws of the state provide for free public schools. A return to elementary principles is necessary. Taxes are necessary to maintain schools. If the taxes could be levied by the board elected by the people in Northwest township, and if the money when raised by taxes could be spent by the board so elected by the people of Northwest township, there would be public schools in Northwest township this year. The law placed the burden upon the electors of the township at the last November election to levy a tax for school purposes. The electors did not levy the tax. The reasons for the failure of the electors to vote the tax are matters to be considered by the legislative department.

Under the present budget limitations it is impossible to maintain free public schools in Northwest township without placing a part of the school levy outside the budget limitations. In order to relieve school districts which may be in the situation Northwest township rural school district is now in, the legislature enacted Seciton 7596-1. The various boards and officers who must act before a tax can be levied pursuant to the provisions

of that section did not, prior to the commencement of this action, take the necessary steps.

The county board of education has taken no action except to have its clerk, the county superintendent, talk with the state director of education. The county superintendent and the county board follow the instructions of the state director of education.

The state director of education has done nothing to open the schools, but has criticised the local board for a financial situation not brought about by it, but brought about under the state laws by the policy of the state department of education, and the county superintendent and county board acting in furtherance of that policy.

It is the duty of the state director of education to assist in keeping the schools open. He advised the township board "you should have closed your schools long ago.."

In taking his oath of office he was sworn to support the constitution and laws of the state including the laws providing for free public schools for all children of school age in the state. He advised the county superintendent "If they think it will increase the value of their property not to keep their schools open and not to educate their children, I do not think that there is any reason why they should be prevented from having just the conditions they wish to have." It is his duty to assist in making the poor schools better, not to close the poor schools. He has stated and published that the schools in Northwest township are very poor; that the people are not willing to support them, although the evidence shows that the tax levy was up to the maximum limit each year, and he, who had the power, did not order an additional levy.

If his statement were true, that the schools in that district were very poor, does that relieve him of his duty to maintain better schools? Is the granting of state aid a special favor which he may at his pleasure bestow or withhold? Where necessary to keep schools open, the granting of state aid should be demanded as a right by the local school board, not granted as a favor by the state director of education.

Sec. 7596-1 specifically provides that the state director of education under facts shown in this case when additional funds are "*necessary to maintain the schools* for eight months in the year shall direct the county board of education to levy the additional taxes on the property of the rural school district *necessary for such purpose,* and the county board of education shall be empowered to levy such additional taxes." The total school levy in Northwest township being 6.45 mills, the additional tax necessary to make 9.5 mills in this case is 3.05 mills. This section does not limit the levy to three mills, but provides that the director of education shall order a levy sufficient to maintain the schools for eight months.

The acts and failure to act of the state director of educacion in the matter of assisting in opening the closed schools in Northwest township is a gross abuse of his discretion.

Mandamus is an extraordinary legal remedy. An extraordinary situation should arise before courts use this power. Courts will not compel acts to be done by a writ of mandamus where there is a discretion in boards or officers relating to the acts; but courts will by a writ of mandamus compel boards or officers to use their discretion; and courts will go further where there is a gross abuse of discretion and direct the officer to do the act. The closed schools in Northwest township is such an extraordinary situation. The failure of the boards and officers to take the necessary steps to open the schools is such a gross abuse of discretion that the court by a writ of mandamus will order them to take the steps necessary to open the schools forthwith.

The board of education of Northwest township is ordered to pass the proper resolutions and to furnish all such information as may be required by the state director of education, or the county board of education, for the purpose of obtaining a share in the state educational equalization fund, and for the purpose of placing an additional levy on the property in said school district, and is ordered to open the schools forthwith and to emlpoy teachers in anticipation of such levy.

The state director of education is ordered to direct the county board of education to levy an additional tax of 3.05 mills on the  property in Northwest township rural school district so that the levy may meet the requirements for the district to share in the state educational equalization fund, and the state director of education is ordered to find that such action is necessary to enable the district to receive a sum from the state educational equalization fund to maintain the schools for eight months in the year.

The county board of education is ordered to levy an additional tax of 3.05 mills on the property of Northwest township rural school district being an amount sufficient so that the levy may meet the requirements for the district to share in the state educational equalization fund, and to take all administrative steps necessary to maintain said schools.

The auditor of Williams county, Ohio, is ordered to place the tax of 3.05 mills so levied forthwith upon the duplicates of said school district for collection.  If the taxes have been paid for the entire year on any tract of land or valuation of personal property, the auditor shall notify by mail the owners of said land or of said personal property of such additional levy, and shall collect the same with the June, 1926, collection of taxes without penalty; if there are tracts of land or valuations of personal property on which only the December, 1925, installment of taxes has been paid the amount so levied shall be collected at the June, 1926, installment of taxes without penalty; on tracts of land or valuation of personal property on which the December, 1925, payment has not been paid, one half of said tax shall be collected with the December, 1925, payment and the other half with the June, 1926, payment.

It is further ordered that no part of the funds so levied shall be used to provide costs of transportation of high school pupils.

I have examined the following recent cases, and many others.:

*Sommers* v. *Putnam Co. Bd. of Ed.* 113 O. S. 177; *State ex*

*rel., v. Beamer,* 109 O. S., 133; *State, ex rel., v. Ross,* 109 O. S., 461; *Brannan* v. *Board of Education,* 99 O. S., 369; *Board of Education* v. *State,* and *Board of Education* v. *Brucker,* not reported, decided by the Court of Appeals of Gallia Co., Oct. 31, 1925; *Blackford* v. *Strohm,* not reported, decided by the Court of Appeals of Crawford county, Oct. 22, 1925.

In none of the cases above cited are the issues therein decided, the issues that are raised in the cases at bar. I make no criticism of the judgments entered in those cases. The syllabus in some may go farther than the matters decided by the judgment. In none of them has the court pointed the way to obtain funds to do the things the court finds should be done. In the *Beamer case,* 109 O. S., 133, on page 151, the court recognizes that in mandamus it has the power to grant any relief warranted by the allegations and proof.

In the *Ross case,* 109 O. S., 461, the court held that the method proposed to obtain money in that case was not proper. Although in the *Beamer case* the court recognized the right to grant such relief as may be warranted by the pleadings and evidence it did not in the *Ross case* state the proper method. It does not point out the proper method to keep the schools open, or obtain funds to furnish high school education, or transportation charges.

The *Sommers case* determines the right of the parent to recover the money expended by him to provide common school facilities when the local board fails so to do. But it does not point out the way a local board may get the money to pay for such school advantages.

In none of these cases has the constitutional questions herein discussed been raised. In none of them has the court been asked to construe the law so as to provide funds to open schools that are closed.

By reason of the extraordinary situation writs of mandamus may issue as above stated.