THE STATE ex rel. HAUGHEY et al. v. RYAN, Judge; GARVER et al.

In Banc, June 2, 1904.

1. CONTEMPTS: Punishment. The power to punish for contempts is essentially a judicial function. And a court can exercise it only for the maintenance of its own authority and to enable it to administer justice in cases before it for adjudication.

2. JUDICIAL POWERS: Where Vested: Board of Arbitration. The judicial power is by the Missouri Constitution vested in certain courts therein named. The General Assembly has no authority to create any other tribunal and invest it with judicial power. and the Board of Arbitration and Mediation is not a court.

3. ———: ———: Contempts. The power to punish for contempt is not given to a court for the purpose of maintaining the authority of a board upon which it would be unconstitutional to confer such power.

4. ———: ———: ———: Board of Arbitration: Witnesses Refusing to Testify. The circuit court has no inherent power to punish as for contempt witnesses who refuse to testify before the Board of Arbitration and Mediation, and the General Assembly can not confer that power on the courts. The act of 1903 attempting to do that is unconstitutional.

State ex rel. v. Ryan.

## Prohibition.

WRIT AWARDED.

*Walter H. Saunders* for relators.

(1)   In every well-organized government there are three distinct, co-equal and co-ordinate departments— legislative, executive and judicial.   The Missouri Constitution makes careful provision for the complete separation of these three departments and by a system of checks and balances secures their equality in power. The act creating the State Board conflicts with the. theory and practice of our Constitution and particularly with section 1, article 6, of the Missouri Constitution, which provides that all judicial power shall be vested in the courts, unless otherwise ordained by the Constitution and with section 10, article 2, of said Constitution, which provides that the courts shall always be open to every person and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay, because it vests judicial powers in the board and authorizes it to determine sacred rights of liberty and private property in a proceeding wholly extrajudicial.   The scope of the award, in determining the conditions of service, wages, hours, etc., far exceed any judgment that a court might render.   (2)   The act is in conflict with section 28, article 2, of the Missouri Constitution, which guarantees the right of jury trial in all common law controversies.   The award of the board, which is binding upon both parties, if either desires arbitration, is reached by no process of jury trial.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for respondents.

We call the court's attention to the following cases wherein statutes of this character have been dis-

cussed and the propriety of enactments of this kind have been approved: Penard v. Court, 124 Mich. 651; Pingree v. Board, 89 N. W. 945; Railroad v. State Board, 17 So. 418. It is true that these cases are based upon a statute authorized by the Constitution of the respective States. This, however, will not militate against the constitutionality of the law in question, for the reason that the legislative authority is vested in the Legislature and that tribunal, by the Constitution, has the right to provide all means and measures that would be productive of public good, so long as it does not interfere with the rights guaranteed to the people by the Constitution of the State itself, and the Constitution of the United States. In fact, in any State where conditions warrant the same, it is the duty of the Legislature to provide boards of the character in question, in order that difficulties arising between employers and employees may be amicably adjusted, if possible. The same reason stated by the opinions of the courts in the cases above cited, applies with equal force to conditions that exist in any State in this Union, regardless of constitutional provisions. In conclusion, we submit to the court that no constitutional or natural rights are taken from the petitioners. The board has not made its findings. No one has undertaken to enforce its finding, and until it does make its finding and some one appears under the charge of being aggrieved thereby, because his constitutional rights are being interfered with, there is nothing before this court of that character to pass upon. Penard v. Court, supra; Pingree v. Board, supra.

VALLIANT, J.—This is an application for a writ of prohibition against the respondents, composing the State Board of Mediation and Arbitration, and one of the judges of the Eighth Judicial Circuit.

The case stated in the petition is in substance as follows:

The relators are residents of the city of St. Louis

and are engaged either as individuals or as members of firms or corporations in the livery business.

The respondents, Garver, Allen and Jenkins, are the constituent members of the State Board of Mediation and Arbitration under the act of the General Assembly creating that board, approved March 7, 1901, and amended March 23, 1903.

On December 23, 1903, certain subpoenas were issued by the board or under its order, addressed to the relators and others, commanding them to appear before the board at a certain time and place named in the city of St. Louis ''then and there to testify and the truth to say in a certain inquiry now being made by said board, concerning a threatened strike, or lockout of employees of St. Louis Liverymen's Association.''

At the time and place named relators by their attorney entered a special appearance for the sole purpose of denying the authority of the board to compel them to appear and testify and denying the jurisdiction of the board in the premises. Thereupon the board applied to one of the circuit judges in the city for an attachment against the relators to compel them to appear and testify. The attachment issued and under it relators were brought before the board, and by their attorney stated that they were not members of the so-called St. Louis Liverymen's Association, that there was no controversy existing between them and their employees, that they were not unwilling to testify as to any strictly relevant matter, provided their legal and constitutional rights were preserved.

Thereupon an attorney present announced that he represented certain organizations of carriage drivers and on behalf of his clients was ready to submit to arbitration what he stated to be a dispute arising out of a proposition for a contract to be made between his clients and the liverymen in St. Louis and vicinity, a copy of which he tendered to the board. The board then began to hear the evidence which the attorney for the

carriage drivers offered, but when certain objections were made by the attorney for relators and were ruled against him he considered that the constitutional rights of his clients were being violated and for that reason he advised them to withdraw and they did so, he accompanying them. Afterwards on January 6, 1904, the board by its petition to the judge of the circuit court in Division 4, represented that relators had refused to obey the attachment, and prayed that they be cited to show cause why they should not be punished for contempt. Upon the filing of that petition the citation issued and was served on these relators. The writ now prayed is to prohibit that proceeding for contempt.

The act of the General Assembly under which this Board of Mediation and Arbitration was created was approved March 7, 1901, and amended March 23, 1903. The first four sections of the original act relate to the appointment of the members, the organization of the board, its meetings, etc.

Section 5 directs that when it comes to the knowledge of the board that a strike or a lockout is about to occur involving ten or more persons, the members of the board shall proceed to the locality threatened and place themselves in communication with the parties to the controversy and endeavor to effect a settlement by mediation and that should their efforts at an amicable settlement fail, the board shall then inquire into the cause of the dispute, and to that end they may issue subpoenas for witnesses and compel their attendance and examine them and send for books and papers "with the same authority possessed by courts of record or the judges thereof in this State." The section then proceeds with further detail of directions as to obtaining the attendance of witnesses and the production of books and papers and concludes with this: "And the board shall have the same power and authority to maintain

and enforce order at its hearings and obedience to its process as by law is now conferred upon circuit courts.''

Section 6 makes it the duty of parties to such a dispute to submit the same to the board for investigation and the board is required within a time limited to render its decision in writing, stating the nature of the controversy, the points in dispute and their findings and recommendations and furnish a copy thereof to the Governor and to each party and have a copy published in a local newspaper.

Section 7 provides that if the controversy is submitted by agreement of the parties to the board for arbitration the decision of the board shall be final and binding; if it is not submitted by agreement, the decision shall be final and binding anyway, unless exceptions be filed with the clerk within five days after the decision is announced.

Section 8 declares that one who violates the conditions of the decision shall be deemed guilty of a misdemeanor and upon conviction thereof in a court of competent jurisdiction shall be punished by fine and imprisonment.

Those are, briefly stated, the general features of the law of 1901; the amendment of 1903 relates only to section 5, which concerns the calling of witnesses and enforcing their attendance and submission to examination.

Section 5 in the original act essayed to confer on the board the same powers to enforce the attendance of witnesses and to compel them to give testimony as were by law possessed by the circuit court. The amendment of 1903 cuts out that part of section 5 and in lieu thereof directs that if a witness will not attend or testify the board may apply to the circuit court and the court may issue its attachment to bring him in and punish him for contempt if he refuses to give testimony.

It is that feature of the law as amended which now demands our consideration.

The power to punish for contempt is essentially a judicial power, and except in the limited degree in which it inheres in legislative bodies, it can be exercised only by a tribunal possessing judicial functions. The British Parliament has always to a limited degree exercised this power, and thus it has become to be recognized in this county as a power belonging to Congress and State Legislatures, although the reason for the existence of the power in the British Parliament does not apply with full force in this country. But when this power is exercised by legislative bodies it is generally in the course of an investigation or inquiry that is judicial in its character, yet necessary to the proper discharge of legislative function.

In 7 Am. and Eng. Ency. Law (2 Ed.), 30, it is said: "The right of every superior court of record to punish for contempt of its authority or process is inherent from the very nature of its organization, and essential to its existence and protection and to the due administration of justice." The point in that quotation bearing on the question now before us is the purpose there indicated for which that power is given the court, that is, the maintenance of its own authority and to enable it to administer justice in the cases before it for adjudication.

The same authority says: "The power to punish for contempt, while belonging in a limited way to legislative bodies, is nevertheless a judicial function of high importance, and can not, according to the weight of authority, be delegated to non-judicial officers or bodies." [6 Am. and Eng. Ency. Law (2 Ed.), 1058.]

All the judicial power in this State is by our Constitution vested in certain courts therein named. [Art. 6, sec. 1, Mo. Const.] The General Assembly has no authority to create any other tribunal and invest it with judicial power. It may and it has created boards with quasi-judicial functions, but those functions are not

really judicial, they partake more of the character of ministerial offices.

This Board of Mediation and Arbitration is not a court, it can not exercise any power that is purely judicial in its character. The original act of 1901 in section 5 essayed to confer on the board the same power to enforce the attendance of witnesses and their submission to examination as was possessed by circuit courts. But the next General Assembly, evidently discovering that a power was then attempted to be conferred, which under the Constitution could not be conferred, amended that section by striking out the words purporting to confer the power, and then in lieu of saying the board shall have the same power in that particular that the circuit court has, it said in effect the board may use the power of the circuit court to accomplish the same end.

That can not be done. The power to punish for contempt is not given to the circuit court for the purpose of maintaining the authority of any tribunal but itself, especially not to maintain the authority of a board upon whom it would be unconstitutional to confer such a power. These men are not in contempt of the circuit court; the head and front of their offending is their refusal to give evidence before the Board of Mediation and Arbitration. When the application was made to the circuit court for an attachment, it was not based on a suggestion that they had defied the authority of the court, but that they had defied the authority of the Board of Mediation and Arbitration. What has the circuit court to do with that?

The power to punish for contempt is not a power conferred on the court by the Legislature, but is inherent in the court for one purpose only, that is, to maintain its own authority. One court can not even punish for the contempt of another. [Rapalje on Contempts, sec. 13; 9 Cyc. Law and Proc., 30, and cases cited.] It is not a power granted by the Legislature to be held or withdrawn as the Legislature may see fit or to be farmed

out to any other body. The Legislature can no more command the court to use the judicial power of punishing for contempt in order to enforce obedience to a non-judicial body than it can command the court to use its judicial function to give to the decision of a non-judicial board the character of a judgment.

The act of the General Assembly now under discussion declares in section 7 that the decision of the board under certain conditions shall be final; suppose it had directed that the decision be certified to the circuit court and that court enter it in its records as a judgment thereof. The invalidity of such a requirement would not be more glaring than what is attempted in this amendment to section 5. Of course what is here said has no application to the procedure prescribed in Revised Statutes 1899, chapter 71, to enforce an award of arbitrators voluntarily chosen by the parties, and to whose decision they have agreed in the form therein prescribed to submit their controversy.

It is not disputed that in a case where a board or a committee of a legislative body has the lawful authority to summons witnesses before it, the Legislature may enact that the refusal of a witness to appear and testify shall be a misdemeanor, and that upon conviction thereof in a court of competent jurisdiction he may be punished by fine and imprisonment. In our search for the law to be applied in this case we have come across cases of that kind, of which, In re Chapman, 166 U. S. 661, is an example. But that stands on an entirely different principle; we have seen no case in which it has been decided that a court can be compelled to use the power that inheres in it for the maintenance of its own authority, to enable a non-judicial board to maintain its authority.

The General Assembly has the power within the limits of the Constitution to declare that the doing of a certain thing shall be a crime and prescribe the degree of the crime, the punishment, the procedure and the

court in which it is to be tried, but the case before us now is not of that kind.

The act of the General Assembly entitled "An Act to repeal section 5 of an act entitled 'An Act to create a State Board of Mediation and Arbitration,' approved March 7, 1901, and to enact three new sections in lieu thereof," approved March 23, 1903, in so far as it attempts to require the circuit court to use its power to punish for contempt to compel witnesses to attend and testify before the board, is an unwarranted invasion of the judicial power conferred exclusively on the courts in section 1, article 6 of the Constitution of Missouri.

Nothing that is herein said has any reference to the power conferred on a notary public to enforce a witness to attend before him and give his deposition to be used in a case pending in a court; in such case the notary is acting in aid of the court. Nor does what is said in this opinion have any application to the power of the circuit court to punish as for contempt of court a witness refusing to testify before a grand jury. The grand jury is a part of the court itself.

There are other questions discussed in the able briefs with which we have been favored in this case, but it is unnecessary for us to consider them, because what has already been said is decisive of this case.

The writ of prohibition is awarded.

All concur.