**Rhonda GABRIEL, Appellant–Respondent,**

v.

**SAINT JOSEPH, LLC and its Affiliated Companies, et al., Respondents–Appellants.**

Nos. WD 75959, WD 75960.

Missouri Court of Appeals, Western District.

Dec. 31, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 2014.

Application for Transfer Denied April 29, 2014.

to file a cross-petition for review and argue it in this Court.

Paul A. Bullman, Kansas City, MO, for appellant-respondent.

Amanda Jo Montee and Susan Montee, St. Joseph, MO, for respondents-appellants.

Before Division Three: KAREN KING MITCHELL, Presiding Judge, LISA WHITE HARDWICK, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Appellant/Respondent Rhonda Gabriel ("Gabriel") brought claims of unlawful employment actions against her former employer, Respondent/Cross–Appellant Saint Joseph License, LLC ("Saint Joseph License"), as well as against alleged managers and/or owners Respondents/Cross–Appellants James Montee ("Montee"), Sandy Gutshall ("Gutshall"), and Ryan Williams ("Williams"). Ultimately, only one claim against one defendant, Saint Joseph License, was submitted to the jury, which returned a verdict unfavorable to Gabriel. Gabriel asserts three points of error on appeal. Respondents/Cross–Appellants (hereafter collectively, "Defendants") assert two points of error on cross-appeal. We affirm as to all of Gabriel's points on appeal. We reverse and remand as to the first point on cross-appeal.

While the first point of the cross-appeal is meritorious and requires reversal and remand, Gabriel's three points on appeal lack merit, and a formal, published discussion related thereto would serve no jurisprudential purpose. Accordingly, we affirm the trial court's judgment as to those points by summary order pursuant to Rule 84.16(b).[1] A memorandum explaining the reasons for our decision on those points has been provided to the parties. This opinion addresses only the first point of the cross-appeal. The second point of the cross-appeal is in the alternative to the first point and therefore, because relief is granted on the first point, the second point is not addressed.

## FACTUAL AND PROCEDURAL HISTORY

Gabriel filed her multi-count complaint against Saint Joseph License, Montee, Gutshall, and Williams, on September 11, 2010 in the Circuit Court of Jackson County. Against Saint Joseph License, Montee, Gutshall, and Williams, Gabriel alleged violations under the Missouri Human Rights Act (MHRA)[2] for discrimination based on sex, religion, and age, as well as retaliation; in addition, she alleged claims for interference, restraint, and intimidation. Against Saint Joseph License, Gabriel also alleged claims for overtime wages, retaliation, and intentional interference under Chapter 290. The case was removed to the Circuit Court of Buchanan County after a motion for a change of venue.

### Parties

Saint Joseph License operates the license bureau in the City of St. Joseph in Buchanan County. Montee is a ninety-percent owner of Saint Joseph License, and Gutshall is a ten-percent owner. Montee also has the "majority voice" in Saint Joseph License and controls the terms and conditions of employment. Gutshall is the operations manager, responsible for the day-to-day management of the office.

Montee is also a part owner of a license bureau in Lee's Summit, which is located in Jackson County. The Lee's Summit office is operated by Lee's Summit License, LLC ("Lee's Summit License"), which is an entirely separate entity from Saint Joseph License. Lee's Summit License is owned fifty-five percent by Montee and forty-five percent by Williams. Lee's Summit License was never a party in this action.

In addition to owning part of Lee's Summit License, Williams is a co-founder of

---

1. All rule references are to Missouri Supreme Court Rules (2013) unless otherwise indicated.

2. The MHRA is codified in section 213.010 et seq.

the Missouri Association of License Offices and has assisted many license office owners with the start-up and operation of their offices. Williams played a transitional managerial role for the first ninety days of the opening of Saint Joseph License, and that period encompassed the time period when Gabriel was hired.

Gabriel began working for Saint Joseph License as a clerk on September 14, 2009. Her last day of work was November 5, 2009, roughly six weeks after her employment began. During her pre-hire interview with Saint Joseph License, Gabriel was given telephone numbers to contact Montee, Gutshall, and Williams with any questions or concerns regarding the office or the hiring process.

**Alleged Discriminatory Conduct**

Gabriel alleged that Gutshall discriminated against her at various points during her six-week employment. In a deposition, Gabriel testified that Gutshall, *inter alia:* 1) treated females in the office more harshly than men, 2) scolded Gabriel for duties that females were expected to do that men were not (e.g., "balancing the window"), 3) did not allow females to take lunch together but did allow two males to lunch together, 4) humiliated her but not male employees in front of customers, 5) allowed a male to work part-time while no other females worked part-time, 6) stated that she preferred working with men over women, 7) commented about women complaining too much and stated that men are easier to get along with in the workplace because they do not gossip or have mood swings and do not need as much time off for family.[3]

During deposition testimony, Gabriel testified that she discussed her complaints with family and co-workers but never with management or any party to this action. At trial, Gabriel testified that before she separated from Saint Joseph License, she had only discussed Gutshall's alleged discriminatory comments with her father and her sister, who were not affiliated with Saint Joseph License, and with a co-worker friend who worked at Saint Joseph License for about two weeks. There is no evidence that any party or anyone in management at Saint Joseph License was informed of the alleged discrimination prior to the filing of a complaint with the Equal Employment Opportunity Commission ("EEOC").

**Alleged Retaliatory Termination**

On October 31, 2009, as part of her duties, Gabriel closed and locked up the business. Before she left, she took a set of license plates and registration tabs from the license office and put them on her personal vehicle without paying for them or paying the sales taxes on the vehicle. Gabriel told Gutshall on Monday, November 2, 2009 that she had taken the license plates and tabs. At her deposition, she testified she had been given permission by Gutshall beforehand to take the license plates and registration tabs.

Saint Joseph License reported the missing license plates to the Missouri Department of Revenue, Criminal Investigations Bureau ("CIB"). Following an investigation, the Department of Revenue suspended Gabriel's state-controlled identification number, which is required for any person who works at any Missouri license office.

---

**3.** As set out below, Gabriel originally asserted numerous additional claims, including wage violations and age and religious discrimination, some of which were voluntarily dismissed, some of which were disposed of in summary judgment, some of which were disposed of after a motion for a directed verdict, and the last of which was resolved unfavorably to her after a jury trial. We address only facts and claims relevant to this appeal.

On November 8, 2009, three days after her termination, Gabriel applied for unemployment benefits. Saint Joseph License opposed her application for benefits on the ground that Gabriel was terminated for misconduct connected with her work for taking inventory (the license plates and registration tabs) for personal use without paying for them. On about December 2, 2009, Williams testified in a telephone hearing with the Division of Employment Security in opposition to Gabriel's application for employment benefits. At the time he testified in that hearing, he was physically located in his attorney's office in Jackson County, Missouri. Gabriel was denied unemployment benefits based on misconduct connected with her work.

## Additional Procedural Details

On January 28, 2010, after she was denied unemployment benefits, Gabriel filed her first charge of discrimination with the EEOC. Upon receiving a "right to sue" letter," [4] she timely filed her multi-count complaint in Jackson County on September 11, 2010.

Relevant to Gabriel's first point on appeal, all defendants jointly moved to transfer venue to Buchanan County. In response, Gabriel requested that the trial court deny the motion to transfer venue or alternatively permit discovery on the issue. The alternative request to conduct discovery on the issue of venue was granted pursuant to Rule 51.045(b). As set out more fully in our unpublished order, after discovery, the trial court reviewed Gabriel's post-discovery filing and trans-ferred venue to the Circuit Court of Buchanan County.

Before trial, the Circuit Court of Buchanan County subsequently granted partial summary judgment, which is the subject of Gabriel's second and third points on appeal. Relevant to Gabriel's second point, the trial court entered partial summary judgment in favor of all defendants on the count of retaliation. Relevant to Gabriel's third point, the trial court entered partial summary judgment in favor of Montee and Williams on all counts, determining that neither met the definition of "employer" under the MHRA.

On March 30, 2011, Defendants made an Offer of Judgment of $10,000 pursuant to Rule 77.04. Gabriel rejected that offer. Fourteen depositions were taken after the Offer of Judgment, for which Saint Joseph License, Montee, Gutshall, and Williams submitted costs of $4,488.70.

Approximately one year later, on March 8, 2012, the trial court granted summary judgment to Montee and Williams on all counts and granted Saint Joseph License, Montee, Gutshall, and Williams summary judgment on two claims. On August 16, 2012, twelve days before trial, Gabriel dismissed all counts of religious discrimination and all remaining counts against Gutshall.

The morning of trial, August 28, 2012, Gabriel filed a Third Amended Petition for Damages that contained four counts under the MHRA against one defendant, Saint Joseph License: gender harassment, gender discrimination, age harassment, and

---

4. In brief, a complainant who believes he or she has been discriminated against can file an administrative complaint with the EEOC or with the Missouri Commission on Human Rights, as relevant to the complaint. *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 89 (Mo. banc 2003). After having received such a complaint, the administrative body decides whether to pursue the complaint; ultimately, the administrative body terminates its proceedings by issuing a "right to sue" letter that authorizes the complainant to file an action in court. *Hamby v. City of Liberty*, 20 S.W.3d 515, 517, n. 2 (Mo. banc 2000) (noting federal and state law have comparable procedures).

age discrimination. On August 29, 2012, Defendants' motion for a directed verdict was sustained on gender discrimination, age harassment, and age discrimination. The only count submitted to the jury was for gender harassment solely against Saint Joseph License. On August 30, 2012, the jury found for Saint Joseph License.

On September 4, 2012, Defendants filed a motion for costs, citing Rules 77.04 and 77.01, and included the itemization of the costs of the fourteen depositions, totaling $4,488.70. The trial court overruled that motion and ordered that each party pay its own costs. Saint Joseph License, Montee, Gutshall, and Williams appeal in two alternative points, asserting error under Rules 77.04 and 77.01. As noted above, because we determine that the trial court erred as to Rule 77.04, we need not and therefore do not address the second point.

Further facts are set forth in the analysis as necessary.

### ANALYSIS

■ Generally the award of costs is within the trial court's discretion and is reviewed for an abuse of discretion. *Sasnett v. Jons*, 400 S.W.3d 429, 441 (Mo.App.W.D.2013). However, the plain language of Rule 77.04, includes language that is mandatory:

At any time more than thirty days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within ten days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon judgment shall be entered. If the offer is not accepted within ten days it shall be deemed withdrawn and evidence thereof is not admissible. *If the adverse party fails to obtain a judgment more favorable than that offered, that party shall not recover costs in the circuit court from the time of the offer **but shall pay costs from that time.***

(Emphasis added.)

■ "Rule 77.04 was designed simply to permit a defendant to avoid court costs by making an offer of judgment which, if accepted, would result in a consent judgment." *State ex rel. Riggs v. Clark*, 14 S.W.3d 719, 721 (Mo.App.W.D.2000) (citing *Katz Drug Co. v. Commercial Standard Ins. Co.*, 647 S.W.2d 831, 840 (Mo.App.W.D.1983)). "The rule provides that all costs incurred after the offer is made shall be assessed against the party failing to obtain a judgment more favorable than that offered." *Bishop v. Cummines*, 870 S.W.2d 922, 926 (Mo.App.W.D.1994). Rule 77.04 contains mandatory directives. *Caldwell v. Heritage House Realty*, 32 S.W.3d 773, 776 (Mo.App.W.D.2000) (determining that if "an offer of judgment is made and accepted in accordance with Rule 77.04, the circuit court must enter a judgment thereon"); *Riggs*, 14 S.W.3d at 721 (Mo.App.W.D.2000) (same).

In this case, Defendants jointly served upon Gabriel an offer of judgment to be taken against them pursuant to Rule 77.04 in the amount of $10,000, more than thirty days before the start of trial. That offer was not accepted, and all of Gabriel's claims were resolved unfavorably to her. Therefore, the last line of the rule is triggered: "If the adverse party fails to obtain a judgment more favorable than that offered, that party shall not recover costs in the circuit court from the time of the offer but shall pay costs from that time." Here, along with their motion pursuant to Rule 77.04, Defendants included an itemized list

of fourteen depositions and their costs accrued which were incurred after their offer of judgment. The total amount requested was $4,488.70. Pursuant to Rule 77.04, the trial court erred in not ordering Gabriel to pay these costs.

In so holding, we reject Gabriel's argument that section 213.111.2 of the MHRA conflicts with Rule 77.04. Section 213.111.2 states that a "prevailing respondent may be awarded court costs and reasonable fees only upon a showing that the case is without foundation."

 "Authorized by the Missouri constitution and statutes, Missouri Supreme Court Rules are to be given the same effect as statutes so long as they are not in conflict with other law." *Gillespie v. Rice,* 224 S.W.3d 608, 612 (Mo.App.W.D.2006) (citing MO. CONST. ART. V, § 5 and § 477.010). "[I]f there is a conflict between the Supreme Court's rules and a statute, the rule always prevails if it addresses practice, procedure or pleadings." *State ex rel. Union Elec. v. Barnes,* 893 S.W.2d 804, 805 (Mo. banc 1995) (citation omitted). Moreover, Missouri Supreme Court Rules may only be " 'annulled or amended in whole or in part by a law' enacted solely for that purpose." *Id.* (citation omitted). Further, Rule 41.03 mandates that we construe the Supreme Court Rules to provide a "just, speedy and inexpensive determination of every action." Rules are construed similarly to state statutes. *State ex. rel. Vee–Jay Contracting*

*Co. v. Neill,* 89 S.W.3d 470, 472 (Mo. banc 2002). Principles of statutory construction are well established:

> When interpreting a statute, our primary task is to determine the legislature's intent. The preferred means for doing this is to accord the statute's language its plain and ordinary meaning. However, we do not construe a statute narrowly if that interpretation would conflict with the statute's purpose. Indeed, the Missouri Supreme Court has instructed that the primary rule of statutory construction is to glean legislative intent by understanding the statute according to its objective. Isolated sentences do not guide us: We look to the provisions of the whole law and its object and policy.

*J.P. v. Mo. State Family Support Div.,* 318 S.W.3d 140, 147–48 (Mo.App.W.D.2010) (internal citations and quotation marks omitted).

██■ In this case, Rule 77.04 applies for several reasons.[5] First, it is procedural in nature, not substantive, and a rule always prevails over a statute if it addresses procedure. *Barnes,* 893 S.W.2d at 805. "Procedural laws prescribe a method for enforcing rights or obtaining redress for their invasion." *Id.* (citation omitted). "Substantive laws, on the other hand, define and regulate those rights." *Id.* "In a sense, substantive laws create rights; procedural laws provide remedies." *Id.* (citation omitted). Here, costs are a form of

---

**5.** We reject Gabriel's additional argument that this matter is not preserved for appeal because Defendants did not file a post-trial motion for a new trial concerning the denial of their post-trial Rule 77.04 motion. In support, Gabriel cites *Johnson v. St. Mary's Health Center,* 738 S.W.2d 534, 535–536 (Mo. App.E.D.1987), in which the Eastern District of this court held that a defendant should have filed a motion for a new trial "with respect to a motion for expenses" filed pursuant to Rule 61.01(g), relating to failure to attend a party's own deposition. We find that authority unpersuasive because the motion in the case at bar could not have been raised as anything but a post-trial motion as it was dependent on the outcome of the proceeding. In other words, *Johnson* does not aid Gabriel as it would be absurd to require the party who won at trial to file a motion for a new trial (relief which the party does not desire because he or she was successful in the trial) in order to preserve for appeal a ruling on what is a necessarily post-trial motion.

remedy and thus the rule is procedural. *See State v. Arteaga,* 304 S.W.3d 296, 298, n. 2 (Mo.App.W.D.2010) (stating that "where the only question is who pays [ ] costs, the issue is clearly procedural").

Second, the plain language of the two provisions indicates that they apply in different circumstances and accordingly can be read in harmony: Rule 77.04 applies *only* in the instance where there is an offer of judgment that complies with the provisions of the rule *and* either the plaintiff receives a judgment in an amount less than the amount of the offer or the plaintiff receives no recovery whatsoever, and in that event the language is mandatory. The relevant portion of section 213.111.2, quoted above, is applicable solely in cases where the plaintiff receives no recovery whatsoever, where the trial court makes the finding that the cause was completely "without foundation," and where, in the trial court's discretion, it is appropriate to assess costs against the plaintiff. Our reading of the plain language is consistent with our obligation to read the provisions in *pari materia,* meaning that we read the provisions with reference to one another. *J.P.,* 318 S.W.3d at 148. To that end, unless there is an offer of judgment, Rule 77.04 is never implicated. Our reading is supported additionally by the purposes behind both provisions. While the purpose behind the MHRA is remedial in nature and furthers the societal interest in eliminating discrimination, *McBryde v. Ritenour Sch. Dist.,* 207 S.W.3d 162, 168 (Mo. App.E.D.2006), one purpose of Rule 77.04 is to encourage settlements, which Rule 41.03, *supra,* and Missouri public policy encourage, *Collins v. Mo. Bar Plan,* 157 S.W.3d 726, 735 (Mo.App.W.D.2005). The purposes behind these provisions are not in opposition and support reading the two provisions in harmony.[6]

### Conclusion

Except as to Point One of the cross-appeal, the judgment is affirmed. Because Point Two of the cross-appeal is in the alternative to Point One of the cross-appeal, we do not address it. A memorandum explaining our reasons for denying Gabriel's three points has been furnished to the parties pursuant to Rule 84.16(b).

The judgment ordering each party to bear its own costs is reversed and the matter remanded for a determination as to the reasonableness of the costs requested by Defendants and which of Defendants' costs are properly assessed to Gabriel pursuant to Rule 77.04 and consistent with this opinion.

All concur.

---

**6.** We further note that Gabriel brought multiple claims in her petition, many of which were not based upon the MHRA and that Saint Joseph License, Montee, Gutshall, and Williams successfully defended against those claims as well. Section 213.111 would have no applicability to any claims other than those brought pursuant to the MHRA.