

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

GWENDOLYN GILL CARANCHINI, )
)
Appellant, )
)
 ) **WD77178**
v. )
 ) **OPINION FILED:**
 ) **November 12, 2014**
MISSOURI BOARD OF LAW )
EXAMINERS, )
)
Respondent. )

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Robert M. Schieber, Judge**

**Before Division Three:** Karen King Mitchell, Presiding Judge, and
Thomas H. Newton and Gary D. Witt, Judges

Following her disbarment, Gwendolyn Caranchini was provided the opportunity for reinstatement of her license to practice law, a condition of which was that she pass the Missouri Bar Examination. Having failed to pass the Missouri Bar Examination on multiple occasions, Caranchini filed suit against the Missouri Board of Law Examiners (Board) in the Circuit Court of Jackson County, purportedly under section 536.150[1] and Article V, section 18 of the Missouri Constitution, seeking both a review of the procedures used to score the essay portion of the July

_____

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2013 Cumulative Supplement, unless otherwise noted.

2013 examination and their application to her essay answers, and a finding that she should have received a passing score on that portion of the examination. The Jackson County Circuit Court dismissed Caranchini's suit on the ground that Missouri law does not provide for judicial review of bar examination scores. Finding no error, we affirm.

## Facts and Procedural History[2]

Caranchini was admitted to the Missouri Bar in 1978 and practiced for nearly 20 years before being disbarred. She described her practice as involving defense of error and omission insurance claims for five years and employment litigation for the remainder of the period of her licensure. Caranchini was disbarred in 1997 as a result of sanction orders entered in four cases from 1989 to 1992. She has continued to represent clients before tribunals in which no Missouri Bar license is required.

Attempting to regain entry to the Bar, Caranchini took and failed the bar examination on four occasions from 2011 to 2013. Her failure was due primarily to low scores on the essay portion of the exam.

Caranchini filed a petition in the Jackson County Circuit Court, captioned as a "PETITION FOR JUDICIAL REVIEW, DECLARATORY JUDGMENT AND/OR MANDAMUS UNDER THE MISSOURI ADMINISTRATIVE PROCEDURE ACT (536.150 R.S.MO) . . . ." Although the caption and the opening paragraph of the petition purported to rely on section 536.150, the body of the petition cited to Article V, section 18 of the Missouri Constitution, claiming that it gave Caranchini the right to judicial review of the Board's scoring of her bar examination answers. She claimed that, in scoring her examination, the Board acted

---

[2] "In reviewing a trial court's grant of a motion to dismiss, this Court allows the pleadings their broadest intendments, treats all allegations as true, and construes the allegations in a manner favorable to the plaintiff." *State ex rel. Helujon, Ltd. v. Jefferson Cnty.*, 964 S.W.2d 531, 537 (Mo. App. E.D. 1998).

arbitrarily, capriciously, and unreasonably, and abused its discretion. She asked that the trial court re-score her examination.

In its Judgment and Order of Dismissal, the circuit court noted Caranchini's position that, at law, there exists no method or procedure for review of bar examination results. The court agreed that, as written, Missouri law does not provide for judicial review of bar examination scores. Noting that it was bound by the law as written, the court dismissed Caranchini's petition without prejudice. Caranchini appeals.

## Analysis

The standard of review for the grant of a motion to dismiss is *de novo*. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). In her point on appeal, Caranchini argues that the trial court erred in dismissing her petition because the Missouri Constitution requires that she have the opportunity for judicial review of decisions related to passage of the bar examination.[3] She appears to claim that the Board acted arbitrarily, capriciously, and unreasonably, and that it abused its discretion, in both developing its methodology for scoring examination essays and applying that methodology to the scoring of her essays, as well as in refusing to provide review and re-scoring of her examination.

Caranchini argues that the trial court erred in dismissing her petition because Article V, section 18 provides her a right to judicial review of both the Board's methodology of scoring bar

---

[3] The Board argues that Caranchini's point relied on fails to present a single reviewable issue, but instead conflates two distinct issues into a single point. Specifically, the Board claims that Caranchini argues both that Article V, section 18 gives her the right to judicial review of her bar examination scores and that the Board's failure to give her the right to review her examination and have it re-scored was arbitrary, capricious, unreasonable and an abuse of discretion. There is merit to the Board's assertion, but we will nevertheless address Caranchini's arguments to the extent that they can be discerned.

3

examinations and the Board's application of that methodology to the scoring of her examination.[4]  Article V, section 18 provides:

> All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record.  Unless otherwise provided by law, administrative decisions, findings, rules and orders subject to review under this section or which are otherwise subject to direct judicial review, shall be reviewed in such manner and by such court as the supreme court by rule shall direct and the court so designated shall, in addition to its other jurisdiction, have jurisdiction to hear and determine any such review proceeding.

Caranchini provides no explanation as to how a claim challenging the Board's method of scoring examinations, generally, or the scoring of her answers, specifically, falls within the purview of this constitutional provision.  Nevertheless, we review her claim of a right to judicial review under Article V, section 18, and find that it fails for multiple reasons.

### A. Caranchini has not preserved a claim that Regulation 6 of Supreme Court Rule 8.08 is unconstitutional.

As a preliminary matter, there is a Missouri Supreme Court rule and companion regulation that expressly prohibit the exact relief Caranchini seeks:  re-grading or re-scoring *and* appeal or review of bar examination scores.  Missouri Supreme Court Rule 8 provides rules

---

[4] Caranchini does not identify in either her point relied on or the argument portion of her brief any statute that would give her a right to judicial review of the scoring of her examination.  Although section 536.150 was the basis for her petition in the circuit court, and although she claims in her jurisdictional statement that section 536.150 and Article V, section 18 are the only ways to contest the scoring of the bar examination, Caranchini makes no reference to section 536.150 in either her point relied on or her argument.  The Court will not consider arguments "not contained in the . . . appellant's brief or in any of its points relied on." *Salvation Army, Kansas v. Bank of Am.*, 435 S.W.3d 661, 670 (Mo. App. W.D. 2014).  Although Caranchini argues at the end of her brief, in very vague terms, that "the Legislature does have the right to give [a bar] applicant the right to appeal [a failing bar examination score] to a higher court," she does not rely on section 536.150 or any other statute in support of this assertion.  Thus, Caranchini has failed to raise any claim on appeal that implementing legislation exists that gives her an independent right to judicial review of her bar examination score, other than her claim that judicial review is required by the constitution.

governing admission to the Missouri Bar. Rule 8.01[5] creates the Board of Bar Examiners, and Rule 8.02(a)(4) grants the Board the authority to promulgate regulations, which then have "the same force and effect as any other portion of Rule 8."[6] Regulation 6, addressing the bar examination, provides: "No regrading or rescoring of any part of the essay portion of the examination will be provided. No appeal or review of exam scores or results is allowed." Rule 8.08, reg. 6.

Caranchini did not mention Regulation 6 in her petition to the trial court. Although she does mention the Regulation in her point relied on, describing it as the basis for the trial court's judgment granting the Board's motion to dismiss,[7] she does not address or challenge the validity of Regulation 6 in the argument portion of her brief. "Arguments raised in the points relied on portion of an appellate brief that are not supported in the argument portion of the brief are deemed abandoned and preserve nothing for appellate review." *State v. Nunley*, 341 S.W.3d 611, 623 (Mo. banc 2011). For the first time in her reply brief, Caranchini argues that Regulation 6 is unconstitutional in that it violates Article V, section 18 by foreclosing judicial review. "We will not address issues raised for the first time in a reply brief." *Salvation Army, Kansas v. Bank of Am.*, 435 S.W.3d 661, 670 (Mo. App. W.D. 2014).[8]

---

[5] All rule references are to the Missouri Court Rules (2013), unless otherwise indicated.

[6] "Missouri Supreme Court Rules are to be given the same effect as statutes so long as they are not in conflict with other law.'" *Gabriel v. Saint Joseph License, LLC*, 425 S.W.3d 133, 139 (Mo. App. W.D. 2013).

[7] This appears to be an inaccurate description of the trial court's judgment, as the judgment makes no mention of the Rule; rather, it simply finds that the legislature has failed to provide a bar applicant with the right to judicial review.

[8] For the first time in her reply brief, Caranchini argues that Regulation 6 is "a special law" and, as such, it violates Article III, section 40 of the Missouri Constitution. This argument not only was raised too late to be considered by this Court, *Salvation Army*, 435 S.W.3d at 670, but also is nonsensical. Article III of the Missouri Constitution applies to the legislative branch, and section 40 prohibits the passage of any "special law" by the "general assembly." To state the obvious, Regulation 6 is not legislation passed by the general assembly. Rather, Regulation 6 was promulgated by the Board to implement Supreme Court Rule 8.08, governing procedures related to the Missouri Bar Examination. The Missouri Supreme Court has the authority to regulate the practice of law. *In re Thompson*, 574 S.W.2d 365, 367 (Mo. banc 1978) (the courts have the "inherent power to regulate the practice of law."); Mo. Const. art. V, § 4 ("The supreme court shall have general superintending control over all courts and tribunals."). To the extent that Caranchini is complaining that Regulation 6 addresses only the practice of law and

5

While we question whether Caranchini can properly raise her claims in the absence of a direct challenge to the constitutionality of Regulation 6, we need not decide that issue, as her claims fail on the merits.[9] As explained in detail *infra*, Article V, section 18 does not provide for judicial review of the Board's scoring of bar examinations.

**B.  Article V, section 18 of the Missouri Constitution does not provide a right to judicial review of the Board's preparation or scoring of, or refusal to re-score a bar examination.**

Article V, section 18 sets out four discrete requirements that must be met in order to invoke the right to judicial review provided therein. As a threshold matter, to invoke Article V, section 18's right to judicial review, a party must allege that the challenged action was not "authorized by law," or in cases in which a hearing is required by law, the same was not "supported by competent and substantial evidence upon the whole record." If such a challenge is made, the party claiming the right of judicial review under Article V, section 18 must also demonstrate that the action challenged:  (1) was undertaken by an "administrative officer or body under constitution or by law"; (2) was judicial or quasi-judicial in nature; and (3) affected private rights.

sets standards that are different than those of other licensed professions, her argument not only fails to claim a "special law" violation but also ignores the fact that, by giving the Supreme Court the power to regulate the legal profession, the Constitution envisions the possibility that the legal profession might be subjected to standards different than those applied to other professions.

[9] Had Caranchini challenged the constitutionality of Rule 8.08, reg. 6, we would have to address whether this court has jurisdiction over her appeal. We note that the Supreme Court has exclusive appellate jurisdiction over "all cases involving the validity . . . of a statute." Mo. Const. art. V, § 3. But while "administrative regulations enacted pursuant to an authorizing statute may have the force of law, . . . such regulations are not statutes." *Adams Ford Belton, Inc. v. Mo. Motor Vehicle Comm'n*, 946 S.W.2d 199, 201 (Mo. banc 1997). If "no claim involving the validity of a statute is involved, initial appellate jurisdiction lies with the court of appeals." *Id.* Though it is unclear whether a Board of Law Examiners regulation, promulgated pursuant to a Supreme Court Rule, should be treated as an "administrative regulation," we need not resolve that issue here, as Caranchini's claims are, at most, merely colorable. "When a party's [constitutional] claim is not real and substantial, but, instead, merely colorable, our review is proper." *Carver v. Delta Innovative Servs.*, 379 S.W.3d 865, 873 (Mo. App. W.D. 2012) (quoting *White v. White*, 293 S.W.3d 1, 24 (Mo. App. W.D. 2009)). "In determining whether a constitutional claim is real and substantial or merely colorable, this Court makes a preliminary inquiry as to whether it presents a contested matter of right that involves fair doubt and reasonable room for disagreement." *Id.* (internal quotations and citations omitted). "Here, we conclude that [the] constitutional claims do not involve 'fair doubt' or 'reasonable room for disagreement,' and thus, that those claims are merely colorable." *Id.*

6

Caranchini's claims fail to meet several of the criteria required by Article V, section 18. She does not claim that the Board acted unlawfully in either administering the bar examination or refusing to re-score or re-grade her examination. Further, the Board[10] is not an administrative body, and the actions of the Board in scoring the bar examination are neither judicial nor quasi-judicial. Therefore, judicial review is simply not available under this constitutional provision.

### i.     The Board's actions were authorized by law.

Article V, section 18 establishes "the minimum standard . . . for review in any case decided on a hearing before an administrative officer or body." *Wood v. Wagner Elec. Corp.*, 197 S.W.2d 647, 649 (Mo. banc 1946). "[T]he constitutional provision for judicial review is self-enforcing and requires no legislation to make it effective." *Union Elec. Co. v. Kirkpatrick*, 678 S.W.2d 402, 409 (Mo. banc 1984).[11] Article V, section 18 provides for judicial review of claims that decisions of administrative bodies are: (1) unlawful; or (2) in cases in which a hearing is required by law, are not supported by competent and substantial evidence on the whole record.

Therefore, if the Board's scoring of the bar examination and its refusal to either re-score or re-grade the examination were subject to judicial review under Article V, section 18, such review would include "the determination of whether [that decision] was authorized by law and in

---

[10] Throughout her brief, Caranchini uses the terms Board, Bar, and Supreme Court interchangeably when referring to the Respondent. Although Caranchini mentioned in her petition that she might attempt to amend her petition to add the Missouri Bar or the Missouri Supreme Court as defendants, that never happened. Therefore, the only parties to this case are Caranchini and the Board.

[11] The section mandates direct review by the courts "as provided by law." The Board argues that there is no right to review unless provided by statute. We disagree. The phrase, "as provided by law," "refers to the *method* of review to be provided (certiorari, appeal, etc.) and not to the *scope* of the review[.]" *Wood v. Wagner Elec. Corp.*, 197 S.W.2d 647, 649 (Mo. banc 1946) (emphasis added). "Thus, while the right to review of [certain] administrative decisions is constitutionally mandated, the manner in which that review is conducted may be determined by the General Assembly." *Jarvis v. Dir. of Revenue*, 804 S.W.2d 22, 25 (Mo. banc 1991). When the legislature does provide implementing legislation, it may provide for a review that "is considerably more broad than the minimum standard of review mandated by article V, section 18" without violating the Constitution. *Id.*

cases in which a hearing is required by law, whether [that decision] was supported by competent and substantial evidence upon the whole record." Caranchini has not alleged that the Board was required by law to provide an administrative hearing, so review—if it exists—would be limited to whether the actions complained of are authorized by law.

Although Caranchini did not allege in her point relied on that the Board acted *unlawfully* in scoring the bar examination or in refusing to re-score or re-grade her examination, she does use the word "unlawful" periodically throughout the argument portion of her brief in describing various actions of the Board. Although we need not consider issues not raised in the point relied on, *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 96 (Mo. App. W.D. 2006), we will review this issue *ex gratia*.

The Board is plainly authorized by law to create and grade the bar examination. "The board is charged with the duty and vested with the power and authority . . . [t]o provide for and conduct the bar examinations[.]" Rule 8.02(a)(2). "'Authorized by the Missouri constitution and statutes, Missouri Supreme Court Rules are to be given the same effect as statutes so long as they are not in conflict with other law.'" *Gabriel v. Saint Joseph License, LLC*, 425 S.W.3d 133, 139 (Mo. App. W.D. 2013) (quoting *Gillespie v. Rice*, 224 S.W.3d 608, 612 (Mo. App. W.D. 2006)); *see also* Mo. Const. art. V, § 5; § 477.010.

The Board's alleged decision to refuse to re-grade or re-score the exam[12] is also authorized by law. As noted, *supra*, under Board of Law Examiners regulations, "[n]o regrading or rescoring of any part of the essay portion of the examination will be provided." Rule 8.08, reg. 6. "The regulations of the board shall be consistent with the provisions of this Rule 8 and shall not be effective until approved by this Court, but when approved, the regulations shall have

---

[12] Caranchini does not allege that she actually requested review or re-scoring from the Board or that she ever asked to see her examination materials.

the same force and effect as any other portion of Rule 8." Rule 8.02(a)(4). As addressed, *supra*, Caranchini has not claimed that Regulation 6 is unconstitutional. Even if Caranchini's claim that she has a right to judicial review under Article V, section 18 were viewed as a challenge to the Regulation's prohibition of appeal or review, that claim would address only the right to judicial review, and therefore would have no bearing on the portions of Regulation 6 that prohibit re-grading and re-scoring of the exam. Each of the Board's actions challenged by Caranchini is authorized by law, and therefore she has failed to make the threshold allegation required to trigger application of Article V, section 18.

### ii.     The Board is not an administrative body.

Article V, section 18 provides for review of the decision of only an "administrative officer or body[.]" The Board was created by Rule 8.01 and sits within the judicial branch of government. Caranchini provides no authority for the proposition that the Board is an "administrative officer or body" as contemplated by the constitution, and we conclude that it is not.

Generally, when the law refers to "administrative" entities, the reference is to agencies of the executive branch, not the judiciary. For example, "[t]he appointment of all members of administrative boards and commissions and of all department and division heads, as provided by law, shall be made by the governor." Mo. Const. art. IV, § 51. The Governor does not appoint the members of the Board; rather, Board members are appointed by the Missouri Supreme Court, Rule 8.01(a); thus, the Board falls under the umbrella of judicial and not executive power. "The power to prescribe the qualifications which will entitle an applicant to be admitted to the bar is judicial," just as "the power to define and regulate the practice of law is, in its exercise, judicial." *Clark v. Austin*, 101 S.W.2d 977, 980, 982 (Mo. banc 1937); *Remington v. City of Boonville*, 701

9

S.W.2d 804, 807 (Mo. App. W.D. 1985) (finding an earlier version of the Sunshine Law not to apply to the judiciary because "[b]y substituting '*any legislative or administrative governmental entity,*' . . . in lieu of '*any constitutional or statutory governmental entity*', . . . the legislature totally removed the judiciary from the" scope of the statute).

Certainly, the judiciary may act in an administrative capacity. But when the Constitution refers to the judiciary in such capacity, it is explicit: "The supreme court may appoint a state courts administrator and other staff to aid in the administration of the courts, . . . and may appoint other staff to aid in the administration of the business of the supreme court." Mo. Const. art. V, § 4.2; *see also* § 610.010 (the current version of the Sunshine Law provides that "judicial entities when operating in an administrative capacity" are "[p]ublic governmental bodies" under the Sunshine Law).

Not only does Article V, section 18 contain no explicit reference to the judiciary, it seems counterintuitive that this section, requiring that decisions "shall be subject to direct review by the courts," would apply to bodies within the judicial branch itself. Rather, the section requires administrative decisions to be subject to direct review by the courts when the administrative body making the decision is functioning in a judicial or quasi-judicial fashion in order to preserve the separation of powers. Mo. Const. art. II, § 1 ("The powers of government shall be divided into three distinct departments – the legislative, executive and judicial – . . . , and no person . . . charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others[.]"). "Thus, an agency may perform adjudicative functions without violating the Constitution so long as the agency's decision is subject to 'direct review by the courts.'" *Asbury v. Lombardi*, 846 S.W.2d 196, 200 (Mo. banc 1993) (holding that direct review of final decisions of the Personnel Advisory Board

10

by the Administrative Hearing Commission was unconstitutional because any final decision must be subject to "direct review by the courts" in order to preserve the separation of powers provided by Article II, § 1 of the Missouri Constitution). Such a requirement is unnecessary for the judiciary, which already possesses "[t]he quintessential power . . . to make *final* determinations of questions of law." *Id.*

### iii. In grading the bar examination, the Board is not carrying out a judicial or quasi-judicial function.

Further, Article V, section 18 provides a right to review of only "final decisions, findings, rules and orders . . . which are judicial or quasi-judicial." Thus, even if the Board could be considered an "administrative body" (a finding we do not make), the constitutional provision would apply only when the Board is undertaking a particular function that is judicial or quasi-judicial in character. Caranchini provides no authority for the proposition that the act of grading an examination is either judicial or quasi-judicial in character.

First, it is important to note that, when Article V, section 18 refers to "judicial or quasi-judicial" decisions made by agencies, it refers to the judicial "function," as opposed to the judicial "power," which is conferred on the judiciary by Article V, section 1, of the Missouri constitution. This is important because judicial "*power* is a nondelegable power resting exclusively with the judiciary. The legislature 'has no authority to create any other tribunal and invest it with judiciary power.'" *Asbury*, 846 S.W.2d at 200 (quoting *State ex rel. Haughey v. Ryan*, 81 S.W. 435, 436 (Mo. banc 1904)). However, "[m]any judicial or quasi-judicial 'functions' are performed routinely by administrative agencies." *Id.* "Ordinarily, the delegation of functions normally associated with the judiciary does not violate Mo. Const. art. II, section 1, because the provision primarily separates 'powers,' not 'functions.'" *Id.* Thus, we must

11

determine whether the Board undertakes traditional judicial and quasi-judicial functions subject to judicial review under Article V, section 18.

Article V, section 18 does not set forth a definition of judicial or quasi-judicial functions. The terms are largely used interchangeably in case law. An agency acts in a "judicial" capacity when it "determine[s] facts, appl[ies] law, and perform[s] other functions traditionally viewed as 'judicial.'" *Asbury*, 846 S.W.2d at 200. Courts have held that, when an agency engages in "the determination of facts and the application of the law to the facts as found, the [action] is quasi-judicial." *Deffenbaugh Indus., Inc. v. Potts*, 802 S.W.2d 520, 527 (Mo. App. W.D. 1990) (citing *State ex rel. McNary v. Hais*, 670 S.W.2d 494, 496 (Mo. banc 1984)).

The two relevant definitions of judicial in the dictionary are:

1) of, relating to, or concerned with a judgment, the function of judging, the administration of justice, or the judiciary

7) belonging or appropriate to a judge or the judiciary

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1223 (1993).[13]

The dictionary offers two definitions of quasi-judicial:

1) having a partly judicial character by possession of the right to hold hearings and conduct investigations into disputed claims and alleged infractions of rules and regulations and to make decisions arrived at and enforced after the general manner of procedures in courts;

2) essentially judicial in function but not within the judicial power or function nor belonging to the judiciary as constitutionally defined.

*Id.* at 1861.

Certainly, the Board engages in a number of activities that could be considered judicial or quasi-judicial functions. For example, in investigating applicants' fitness to practice law, "the Board may obtain such information as bears upon the character, fitness and general

---

[13] Webster's Third New International is the Missouri Supreme Court's "institutional dictionary of choice[.]" *AAA Laundry & Linen Supply Co. v. Dir. of Revenue*, 425 S.W.3d 126, 132 (Mo. banc 2014).

12

qualifications of the applicant and take and hear testimony, administer oaths and affirmations and compel, by subpoena issued by [the Supreme] Court, the attendance of witnesses and the production of books, papers and documents." Rule 8.11(f). Additionally, "[I]f the board refuses to grant approval of any application, the applicant may have a hearing by the board by serving a written request . . . within 15 days after notice of refusal has been mailed[.]"[14] Rule 8.12(a). The applicant is entitled to have counsel, present evidence, receive a written decision setting forth the Board's reasoning, and to directly appeal to the Supreme Court following an adverse decision. Rule 8.12(a), (c)-(d).

But when it grades an examination, the Board is performing neither a judicial nor a quasi-judicial function. It does not conduct a hearing, make findings as to any disputed claims, conduct investigations, or do anything else considered "judicial" in nature. Nothing related to merely grading an exam qualifies as "functions traditionally viewed as 'judicial.'" *Asbury*, 846 S.W.2d at 200.

Caranchini's claim to the right of judicial review under Article V, section 18 fails because her allegations against the Board do not meet several of the threshold requirements of the constitution.

### C. The relief Caranchini seeks—re-scoring of her examination by the courts—is unavailable.

Caranchini argues that the Board's scoring of her examination was "arbitrary, capricious, unreasonable, or an abuse of discretion[15] given [her 30 plus years of] highly successful practice

---

[14] This review does not appear to be available to applicants who merely fail to pass the bar examination, because, as noted *supra*, Regulation 6 prohibits "regrading or rescoring of any part of the essay portion of the examination," and precludes any "appeal or review of exam scores or results." Rule 8.08, reg. 6.

[15] We presume that Caranchini's citation of the arbitrary, capricious, unreasonable, and abuse of discretion standard is a result of her reliance on section 536.150 in the trial court. The legislature has enacted statutes such as section 536.150, which more fully implement Article V, section 18, and expand claims that can be made beyond those referenced in the Constitution. § 536.150.1. When the legislature does provide implementing legislation, it may provide for a review that "is considerably more broad than the minimum standard of review mandated by

13

requiring complex legal writing skills."  In her petition, Caranchini asked that the trial court "review the essay portion of [her] July 2013 bar examination and find that her essays constituted passing scores."  Caranchini cites to no case where this has been done, and we have found none.

Other courts have consistently rejected requests to have examinations re-graded, "usually on the premise that the right of reexamination[] is a sufficient guarantee of fairness."  *In re Mead*, 361 N.E.2d 403, 405 (Mass. 1977).[16]  "The fact that no case has been found in which the court having final jurisdiction in the matter reviewed the action of a bar examination board or committee with respect to the grading of a specific paper indicates the reluctance of the courts to substitute the court's judgment in a matter involving discretion for that of the particular board or committee charged with that function."  Gene A. Noland, Annotation, *Court review of bar examiners' decision on applicant's examination*, 39 A.L.R.3d 719, § 2[a] (1971).  Exam grading is "a matter of subjective evaluation by the examiner which could never be proved in error by the applicant."  *Lucero v. Ogden*, 718 F.2d 355, 359 (10th Cir. 1983).  Under constitutional review of the Board's decision, it would be improper to micromanage the Board to the extent of re-scoring essay answers.  The courts will not "perform the role of 'super bar examiner' by regrading" essays.  *Whitfield v. Ill. Bd. of Law Examiners*, 504 F.2d 474, 477 n.7 (7th Cir. 1974).

The Supreme Court and the Board have been entrusted with determining who will be able to practice law in the State of Missouri.  A failing examination taker cannot litigate whether the Board "'should have' done something different or whether there is a better means to accomplish

---

article V, section 18" without violating the Constitution.  *Jarvis*, 804 S.W.2d at 25.  But, as mentioned *supra*, Caranchini relies only on Article V, section 18 before this court and thus, she has abandoned any claim under section 536.150.  We review Caranchini's claim of arbitrariness, but do not hold that Article V, section 18 provides review for anything other than a claim that the decision is not "authorized by law."

[16] Citing *Tyler v. Vickery*, 517 F.2d 1089 (5th Cir. 1975), *cert. denied*, 426 U.S. 940 (1976); *Whitfield v. Ill. Bd. of Law Examiners*, 504 F.2d 474 (7th Cir. 1974); *Feldman v. State Bd. of Law Examiners*, 438 F.2d 699 (8th Cir. 1971); *Chaney v. State Bar of Cal.*, 386 F.2d 962 (9th Cir. 1967), *cert. denied*, 390 U.S. 1011 (1968); *Staley v. State Bar of Cal.*, 109 P.2d 667 (Cal. 1941); *In re Chachas*, 369 P.2d 455 (Nev. 1962); *In re Wayland*, 510 P.2d 1385 (Okla. 1971); *Petition of DeOrsey*, 312 A.2d 720 (R.I. 1973); *In re Monaghan*, 225 A.2d 387 (Vt. 1967).

the same goal, and certainly not whether the chosen means is the best method." *Linton v. Mo. Veterinary Med. Bd.*, 988 S.W.2d 513, 516 (Mo. banc 1999).[17]

### D. Caranchini's suggested approach to grading bar examinations is arbitrary.

Caranchini argues that there should be a different standard in place for persons such as her who have "practiced successfully . . . for some 30 plus years . . . [but] who stopped practicing for whatever reason and now seek readmission[.]"  She states that there needs to be a "special avenue" for people like her because such persons are "special" and "different" from the average applicant, though it is unclear what this "special avenue" would entail.  Apparently "applicants who have practiced law for a substantial period" would have "their 'practice' reviewed by lawyers" in order to determine their competency.  But this "special" group would not need to demonstrate any proficiency outside of their particular area of expertise, even though this proposal does not appear to limit anyone's practice area to a certain field.  "Newly minted lawyers," and those "who have practiced for a *de minimus* time period such as less than ten to fifteen years" would not qualify for this special procedure.  Only those "who have practiced law [for an undefined] substantial period" need apply.  Caranchini argues that the effort involved in implementing this plan would be minimal because only "[a] *de minimus*" number of applicants would qualify.  Indeed, it is possible that only Caranchini herself would qualify.  Although she claims that the Board's approach is arbitrary and capricious, it is she who advocates for an

---

[17] In support of her claim that the refusal to re-score and re-grade bar examinations is arbitrary, capricious, unreasonable and an abuse of discretion, Caranchini claims, with no support whatsoever, that no other profession or state bar refuses to review and re-score failing exams.  Caranchini has failed to provide evidence of the Board's complete isolation on this issue, and it appears to be demonstrably false.  The fourteen jurisdictions that have adopted the Uniform Bar Examination "do not regrade the answers of failing applicants after examination results have been released."  Kellie R. Early, *The UBE: the Policies behind the Portability*, 80 THE BAR EXAMINER 17, 19 (Sep. 2011), http://www.ncbex.org/assets/media_files/Bar-Examiner/articles/2011/800311Early.pdf; *see also Lucero v. Ogden*, 718 F.2d 355, 358-59 (10th Cir. 1983) (upholding Colorado Rule of Civil Procedure that precluded review of the Board's decision).  Even if her allegations were true, the fact that the Board has adopted different standards than other professions or other states in regulating the practice of law does not render the Board's actions arbitrary, capricious, unreasonable or an abuse of discretion.

arbitrary approach. The purpose of the bar examination is to ensure that an objective set of criteria is used, as opposed to "a shifting standard which would lead to an ad hoc system of admissions." *Petition of DeOrsey*, 312 A.2d 720, 725 (R.I. 1973).

Caranchini's allegations fail to state a claim under Article V, section 18, and she does not seek relief that can be afforded by the courts. Therefore, the trial court did not err in dismissing Caranchini's petition because it failed to state a claim upon which relief could be granted. This appeal is denied.

## Conclusion

For the foregoing reasons, the Judgment of the circuit court, dismissing Appellant's claim, is affirmed.

_____

Karen King Mitchell, Presiding Judge

Thomas H. Newton and Gary D. Witt, Judges, concur.